Michael Powell on behalf of Mr. Hofus. We have two, I think, main issues here. One is the instructional problem, and the other is whether the denial of admission of certain expert testimony. And I think what we have here in this Court, and a lot of courts have explained to us, that we're trying to decide what constitutes an attempt. And that's awfully difficult. And so, at least from our perspective, I think it's difficult for this Court. There's a lot of cases that, as we put in there, there's been a lot of ink spilled over this, and making that line is difficult. And it is — Congress chose to criminalize the act of enticement, correct? Yes, Your Honor. And this is not, forgive me, Justice Scalia, a co-ed offense. This is an attempt. Correct? Incoherent, yes, Your Honor. So this is an attempt to entice. That's the framework. Well, an intent to — but the enticement has to be for a specific purpose. And that purpose is to engage in some kind of sexual — that's the entice — that's the purpose of the enticement. And that, as we believe, is the specific intent that goes along with the attempt. Is there any requirement that the person intend to complete the act? Well, Your Honor, if any attempt — There's no, isn't it? Well, I believe there is, Your Honor, because if — if you're saying that a person has to attempt a particular crime, he has to intend to complete the crime. I mean, that's the point of an attempt. If he's not really attempting to complete the crime, then what's — why is he being held liable for that? I mean, that's — that's my understanding of how attempt law goes. There's a difference between enticement and having sex, improper, illegal sex with a minor, isn't there? Yes, Your Honor. But the enticement is for that purpose. And that seems to me to be the specific intent of the crime. So is it your argument that an individual who does everything within that individual's within his power to entice an underage girl to engage in the act of illegal sex, but at the — at some last moment before actually completing a sexual assault decides not to, they haven't violated the statute your client was convicted under? No, Your Honor. I think — but the — what we're trying to ascertain here is where you draw that line. I mean, at what point? Because it is an inchoate crime. So we're trying to determine, number one, the intention, and number two, did he do something substantial enough to say that — and this is part of our — our argument — that if he had not been interrupted, he would have completed the crime, which is the language the discord uses to determine, and mostly in whether or not there's sufficient evidence to hold someone liable on what the government — Isn't the standard substantial step? Yes, Your Honor. Whether he took substantial steps? And the question is what — I mean, I — and I think the question is, and this is what the course wrestles with — with this is, what constitutes a substantial step? Well, in this case, he got pictures — nude pictures of 13-, 14-, 15-year-old girls, correct? No, Your Honor. He never received those pictures. That was the faulty premise of it. They — these — He was aware those pictures existed. He at least had some text information, but he himself never had those pictures. And that's — The phone didn't receive pictures, right? It did not, Your Honor. It wasn't — it wasn't picture-capable. And this is one of the reasons that — Didn't he use the possibility of the exposure of those pictures to entice these young women to meet him? No, Your Honor. It's our belief, and I — and this comes up with the expert testimony that — He didn't send a text message saying, I'm at a photo shop. I'm going to expand these and take them to the high school. And that never happened? And as I understand it was, is that's because he wanted them to continue to text with him. The meeting part of it was never actually affected until the FBI got into this. And that was well after — that was sometime later. And what is — is different about this case, and at least factually, there's a number of unique things. Number one, he didn't initiate this. He somehow got on this supposed sexting photograph list. His — his phone received this. He didn't solicit that. He didn't — he didn't initiate that contact at all. So — and we never did — He initiated the contact with the young women — or the young woman, rather. Did he not? Well, he texts back to the message that he got. He interfered with some trafficking between some young people. He picked it up and he interposed himself, right? He got in that loop and then he started texting these people. And this went on for some time. They texted him back. And, in fact, the one girl that was alleged he was going to meet as the FBI person, admitted that she represented herself to him as an adult through many of the early texts, which were all lost because they — the phones don't save that many. And the FBI didn't think to try to save those when he picked up the phone. Didn't he send a text to M.M. and tell her that unless she met with him to do sexual things, he would send the nude photos to everyone they knew and post them on the Internet? Yes, Your Honor. He did. But, again, you know, there's more to it than that. Number one, he has to think that this is someone that's not an adult. And in Nevada, that would be someone that's not 16 or older. Okay. Didn't M.M.'s sister call him and tell him to stop calling her 14-year-old sister? He did. She did, and he did, because that terminated the M.M. part of the case, because it was the other one that the FBI assumed her identity. I don't believe, in my memory of the record, is that he ever texted M.M. again once her sister says, leave her alone. That didn't happen. And I don't believe M.M. texted him. So I think that terminated at that point. And then it was — He didn't send B.T. a text saying he was at a coffee show and found a way to enlarge cell phone images to poster size? Yes, Your Honor. B.T. was the one that he was — that the FBI assumed her identity. But, again, B.T. — He didn't know that. He didn't know. But B.T., all of this — for this previous — more than a month of texting, B.T. had represented to him that she was an adult and engaged in — and quite explicit sexual texting back and forth with him. He — this is the thing, Your Honor, which distinguishes from a lot of other cases. It makes it more close to the Seventh Circuit's case in Gladdish's that he didn't know who this was. So this is a — this is quite different than what I thought your argument was going to be. So you're now saying that your client thought that the young person he was going to meet was an adult? Is that what you're saying? Your Honor, what we're saying is, is that he didn't have that information. I mean — Well, let's be serious here, counsel. He — he was there on the bench. Yes. Who did he think he was going to meet, an adult or a minor? I don't think he even knew, Your Honor. Oh, come on. No, seriously. He said that she said she was an adult. She — well, that — So what's the purpose of telling us that, if that's in the record, if he didn't think he was going to meet an adult? If he was going to meet an adult, why was he being so circumspect about not having anybody know? Well, as Dr. Ellisman would have testified, if he'd have been allowed to, that Mr. Hofers was never going to meet anybody. That wasn't — that's not what he was interested in, at least. He had no history of having any kind of inappropriate action with a child, none. He had no knowledge of this person, but what Dr. Ellisman — But you just told us that he was told that — that — was it B — B — Bt, was it? Bt, yes, Your Honor. Had — had said that she was an adult. That was in — well, this is — this — that was prior to March 5th, when her phone was seized, and then as the FBI came on once, because apparently the FBI wasn't having any success getting Mr. Hofers to meet. So what are you saying? This is entrapment? No, Your Honor, it wasn't. I mean, if we would have — if we would have thought it was entrapment, we would have run that defense, but we didn't. But what I'm saying is, okay, this is the problem you have in an attempt case. You have a long history of this, and what he was going to do — and two points. Number one, the jury wasn't told that they had to have specific unanimity on the thing, which every model instruction in our circuit has that requirement. Number two, substantial step wasn't really fully explained, as this Court explains it in Buffington and the other cases that we cited, that — that it has to be such a step of such magnitude that unless interrupted, that the crime's going to be completed. So — and in this case, and the interesting part about this is, he sat on that bench for over 11 minutes while the FBI watched him and did nothing. He didn't move. He said, go over here, go over there. He's not moving from the bench. And the only reason they intervened is because they said, well, we don't — I mean, I'm speculating a little bit, but they moved in and arrested him at that point before he even got near, within a half a mile or a quarter mile of the alleged meat place, because they thought his phone had the pictures on it, and it turned out it didn't. Okay. We've got a little time for rebuttal. Thank you, Your Honor. Thank you. Ms. Olson? Good morning. May it please the Court. I'm Elizabeth Olson from the United States Attorney's Office in Reno on behalf of the United States. Is your old U.S. attorney back? I'm sorry? Yes, he is, Mr. Bogdan, yes. I want to — I want to clarify one factual thing, because I — because we do have a — what I think is an important factual disagreement. I find nowhere in the record where B.T. represented to Mr. Hofuss that she was an adult, and the defense counsel makes that point several times in his brief, and what he cites is Excerpt of Record 319. And I think that it's based on — that's not my interpretation of what she's saying. She's being asked — they had done some — they had texted some very sexually explicit stuff back and forth, and at one point, B.T. had said something — had texted something that was quite vile, and the defense counsel said, now, why did you do that? And she said, because I was with an adult, and he was being mean, and so I was responding in kind. You know, I was texting to an adult. I don't interpret that as her saying that she was pretending to be an adult. I interpret that as that's why she said something that was so nasty. You're referring to something that is in the record, which I'm familiar with. Yes. He was saying that it was something that occurred that the FBI never got transcribed. Do you know anything about that? There were — there were several messages. By the time the FBI got involved, there had been discussions from some time. I don't see any testimony in the record anywhere at trial that suggests that she had represented herself to be an adult. And, in fact, trial counsel never made that point. I mean, he never argued in opening statement or closing argument that he thought she was an adult. So the government's position is that there's — in no deposition or anywhere in the record is there any suggestion that this young woman posed as an adult other than that 319, and that's a matter of interpretation. I will just — with one caveat. My understanding is that when he was arrested, he made a videotaped statement, and that statement was played to the jury. And I apologize to the Court. I have not viewed that statement, and there was no transcription of it in the record. So maybe he said something in that. But my point is trial counsel was not arguing that he thought that she was an adult. I'd like to ask you a question that wasn't raised in the opening argument, but it does seem to be an important question. The expert testimony was offered that he would not have completed the crime, that this was a fantasy. And that was excluded. And the ground was that it went to the intent. But, of course, it didn't go to the intent. The intent was the intent to make the attempt. And the intent to complete the crime was only a circumstance. So why wasn't that admissible? I think — and I'd have two responses, one factual and one legal. If you could go a little bit slow and a little bit loud, that would be good. I have a factual response and a legal response. The factual response is, if you read the proffered testimony, Dr. McEllistrom testified outside the presence of the jury of what it was that he wanted to. And I disagree a little bit with the defense's characterization of what Mr. McEllist — what Dr. McEllistrom was suggesting that he would testify. He said that the defendant held this texting that he was doing, that this was just a fantasy for him. Well, how do you know — and he was asked, how do you know this was just a fantasy? Because he had the opportunity to meet, and he didn't meet. Okay? And then the question is, well, why didn't he meet? And the answer was, because this was just all a fantasy to him. So I think if you read Dr. McEllistrom's testimony, it's a little bit circular. So that's sort of the factual dispute. But on the legal question, to the extent that Dr. McEllistrom would have testified, the defendant — that this was just a fantasy to him, this wasn't about him trying to actually entice this girl to have sex with him. That is the only question, really, for the jury to decide, because the factual — I mean, we had the text, we had the threatening voicemails, we have him getting off the bus a couple hundred yards away from where he's scheduled to meet her, texting, I'm on my way, I'm here. You know, the factual issues in this case were really not in dispute, and the question for the jury to answer was the why question. Was he doing this because — did he have the intent to entice this girl to have sex with him? And Dr. McEllistrom, to the extent that he was going to testify, the defendant did not have the intent. This was just a fantasy for him. That — that is barred by 704B. It's the one thing that expert witnesses are simply not permitted to testify. Well, it's also not probity visit as to whether he was attempting to entice this young woman or persuade her to engage in an illegal sex act. Yes. Well, that's true. I think it's not relevant. I mean, it kind of depends on — Well, why isn't it relevant if he does not intend to go through with the act? If he has — and that is not the crime being charged. The expert says he did not intend to go over the act. That's a circumstance which the jury can take into account as to whether he was trying to induce her. Right. And I think that — And you know what Judge Peck said? He said, well, that will confuse the jury. I don't think it confuses them. It creates a doubt. I think it would confuse them in this way. And like I say, I'm not — there's two ways to interpret what Dr. Ellstrom's Profford testimony would be. One, that the defendant didn't have the intent, which is the question for the jury. No, the intent to go through with the act. Yes. He says this is a fantasy. Right. So what's wrong with that testimony?  Okay. What's wrong with that testimony? I think that's the — precisely the question that the jury had to — It is? No. The jury is not deciding whether he was going to engage in sex. Yes. That's a different question. Okay. This is — that is merely a circumstance. Okay. Do you understand that? Yes, I do. Yes, I understand. All right. So what's the problem with the testimony? I think the question — the problem with it there is if he — if the jury decides that he has the intent, that he had the intent to entice this girl, and that he — and that he took a substantial step towards — towards the enticement, this — this idea that, well, subjectively, he wouldn't have gone through with it, that's — that's simply not relevant and confusing. Well, it's not a — it's not a defense to the crime. It's a circumstance bearing on whether he was going — engaging in the crime. You see the difference? I do see the difference. I think one — And it's certainly not a defense. That sense is irrelevant. But it's a — an important circumstance. If he does not intend to carry out the crime, maybe he didn't even — wasn't even attempting to seduce her. This is — this is an interesting argument that was not — I mean, this was not raised below because — I picked it up from the brief. Defense counsel's argument at trial was that the government did have to prove that he had the intent to go through with the sex. And we — you know, and we argued about that. And it's a — you know, this because the crime is the enticement, there's — there's a question of what — of whether that's really so. The defense was arguing that — that the government did have to prove that he intended to go through with the sex and that Dr. McAllister was going to testify that he — that he wouldn't have, either because he didn't intend to, that it was only fantasy, or because his psychology was such that he would have backed out at the last minute. Now, that second piece, I think, is — is simply not relevant at all. I don't think this Court, and I don't know of any court that suggested that this substantial step analysis is a subjective test, that you look at this one individual, because then you'd have the situation where, you know, with one bank robber, when he takes the gun and gets the getaway car and walks into the bank, you can arrest him. But the other one, you have to wait until he pulls it out because his psychology is such that, well, he never would have gone through with it. I mean, you know, we criminalize attempts because we want to get dangerous people. Another question I wanted to ask. The model jury instruction of the Ninth Circuit says the jury is to be told to be unanimous on the substantial step. This jury was not. Yes. So what's your answer to that? Two answers to that. One is the objection was not preserved. And this Court has made clear, and Kessy is the case that I cite, that — So it's plain error. Yes. So that it's plain error. Well, yes. And this is actually sort of a poster child of why that specificity requirement is there, because if the defendant had objected to the omission of that language, the government certainly would not have objected. All right. But it's now plain error. Right. Tell me why it's not plain error. Because this is a straightforward case with a simple set of facts. What's straightforward? There were several substantial steps. Judge Hawkins enumerated them. Yes. How do we know which one they agreed on? I think that if we — that at plain error, it is the defense's burden to show a reasonable possibility that he would have been acquitted if that instruction had been given. Wasn't a general unanimity instruction given? Yes. And it was. I mean, the jury was told that they had to be unanimous. Now, this — Unanimous on his guilt, not on the substantial step. Yes. I see that. So the Ninth Circuit — you're not saying our instruction is wrong. I'm actually not sure about that. I'm not sure about it. No, because I'm not sure that the instruction is as specific as it looks. In the model jury instruction on attempt, it says it has that, with all of you agreeing, specific unanimity. And in the comments, the only — there's a cross-reference to 7.9, which is the specific unanimity instruction. And when you go to that 7.9, it talks about usually a general unanimity instruction is sufficient in some cases where there's a variance between the indictment or where it's a specifically complex case. A specific unanimity should be — instruction should be given. And if it is, here's what you should say. So I'm not entirely clear that even the model rules are saying that that unanimity has to be there in every attempt case. And I would — I would think it's probably not — probably not necessary in most straightforward attempt cases. But — but — so, you know, to the extent that — that the model instruction suggests that it has to be there in every case, I would say that that's probably not correct. But I'm not sure that that's what the model instruction actually says. I'm over my time. Thank you. Roberts, you're over your time. Rebuttal? Put two minutes on the clock. We'll give you two minutes. Thank you, Your Honor. On the unanimity, okay, this Court has said the texting's not enough. We have those cases, Dengra, Meeks. Making phone call arrangements in meetings, Harper, not enough in review if that's what they've got. So when the government's sitting there arguing, well, here's the text, that's enough. Here's the making the meeting, that's enough. Here's getting on the bus, that's enough. So which — okay, we can have three, three, and three. Two of those options are not enough. That's why you need the specific unanimity. And I think because, as I pointed out in the reply brief, every attempt instruction in the model instruction has the specific unanimity in it. And I dispute that we didn't offer it. We offered it in ours following the model instruction 5.3. And we asked the judge to follow it. He followed part of it and didn't follow the other part of it. I think, personally, that's plain error. If he's going to read part of an instruction and then take out, at least from our perspective, the single most important part in a substantial step analysis is unanimity since we can have more than one fragment and we don't know where that line is drawn, then that's a problem. And in this case, there was a lot of problems with this. And I think there's a lot of ambiguity in the whole deal. And this comes back now to the — Dr. McEllison's testimony. If it's fantasy, then that obviously goes directly to the intent analysis in terms of a circumstance, whether or not he's actually trying to entice him or he just likes to do this text sexting, as they call it. I mean, that's not a crime. But you have a problem with Getsky, don't you? Well, this Court's case. I do. Yeah. But we distinguish that with the different factual circumstances in here. And they were looking at that from the perspective of the issue was raised whether or not there was sufficient evidence. And what they were saying is they had a prior relation. This is a developmentally delayed child. And all of this grooming. Dr. McEllison testified there was no grooming in this case. And that's why we read and, in fact, what we cited, too, in the record, when she was saying she was responding to an adult as an adult, which leads one to believe over the course of this, in particular, given her at least explicit sexual knowledge that she was texting back and forth, that she would be an adult. Okay. All right. Thank you, Your Honor. Thank you both for your argument. The case just argued to be submitted for decision. The Court's going to stand in recess for about 10 minutes, and then we'll take up the Valdivia case.
judges: Noonan, Hawkins, Smith M.